UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAX FORMAL CO.;<br>PLF, LLC<br>*Plaintiffs,*<br>v.<br><br>THE HARTFORD CASUALTY<br>INSURANCE CO.,<br>*Defendant.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 08-006 ML |

**PLAINTIFFS' STATEMENT FOR PRETRIAL CONFERENCE**

In compliance with the directive in the notice of pretrial conference, the plaintiffs submit this statement of facts and legal issues.

The plaintiffs have asserted two claims: (1) a claim under a property insurance policy for damage to buildings; and (2) a claim against the insurer for bad faith in refusing to pay or settle the claim under the policy.

For nearly forty years, Max Formal Co. has engaged in the business of selling linens and clothing from a location on North Main Street in Providence. PLF, LLC, an affiliate of Max Formal, owns three contiguous buildings located on one parcel at 1164 North Main Street, Providence. The stockholders of Max Formal and members of PLF are Paul L. Formal and his Mother, Regina Formal Berger. (Max Formal and PLF are hereinafter collectively referred to as "Max Formal.")

Max Formal operates its business from two of these contiguous buildings, and leases the third to a commercial tenant. The casualty insurance covering the buildings was issued to Max Formal by defendant, The Hartford Casualty Insurance Co.

The Max Formal buildings on North Main Street are situated immediately adjacent to the former Sears Tire Center, which was demolished in 2007 and replaced

with a Walgreens pharmacy. Beginning on or about mid-February 2007, and continuing intermittently until April 6, 2007, contractors were engaged in demolition of the buildings, foundations, and asphalt and/or concrete surfaces of the former Sears Tire Center, and (after demolition) compacting the soil at the site with a vibratory roller.

On numerous days during the period when such demolition and compaction activities were being conducted on the adjacent property, vibrations emanating from such demolition activity caused substantial damage to Max Formal's buildings.

The damage caused to Max Formal's buildings from the said demolition activities on the adjacent lot included cracking of masonry and concrete walls and foundations throughout the buildings; cracking and bowing of the masonry and concrete wall on the northerly side of the buildings; cracking of interior plaster throughout the buildings; broken glass windows at several locations throughout the buildings; damage to asphalt around the perimeter of the buildings; and substantial damage to a sign mounted at the top of the buildings.

The estimated costs of repair of this damage are approximately $200,000. In addition to the costs of repairing the damage to the buildings, said damage and the repair thereof has caused and will cause Max Formal to suffer disruption to the operation of its business and loss of revenues and income.

All of the said tangible damage for which Max Formal asserts claim occurred during the period between mid-February of 2007 and early April of 2007, the period during which demolition and soil compaction activities were being conducted on the adjacent property.

Max Formal promptly gave notice and submitted claim to the Hartford, supported by an engineer's written opinion that the damage to the buildings had been caused by the demolition/compaction activities on the adjacent lot.

The Hartford retained a contractor with which it had an ongoing relationship to advise on the claim. Ultimately, the Hartford denied coverage based on the preposterous contention that all these new cracks in masonry and concrete had been caused by frost in the ground. As to the cracking in interior plaster walls, the Hartford contended, falsely, that these had occurred long prior to February of 2007 from gradual wear and deterioration. As to broken windows and damaged asphalt, the Hartford did not state any reasons for denial of these claims. The Hartford never offered any compromise, settlement, or any payment of any amount whatever on these claims.

The policy is an "all-risk" policy, which covers all risks and causes of loss, unless expressly excluded by the policy. The two policy exclusions invoked in this case are an exclusion for damage caused by earth movement (the Hartford contends that frost caused earth movement), and an exclusion for damage caused by gradual wear and deterioration. The insurer has the burden of proving that claimed damage is excluded from coverage under a policy exclusion. Thus, the legal issue on the policy claim is whether the defendant insurer can carry its burden of proving that the damage is within the exclusions it invoked in denying coverage.

The legal standards for the bad faith claim are governed by <u>Skaling v. Aetna Insurance Co</u>., 799 A.2d 997, 1010-1013 (RI 2002)("in every case, an insurer must determine whether liability is reasonably clear by objective, measurable criteria, engage

in settlement negotiations and attempt, in good faith, to resolve the claim so that its insured is relieved from the burden of instituting a suit to recover under the policy.")

/s/ John D. Deacon, Jr.
John D. Deacon, Jr. (#2226)
72 Pine Street
Providence, Rhode Island 02903
401-272-8080
401-521-3555 Fax
jdeacon@lmkbw.com

Counsel for Plaintiff

**CERTIFICATION**

I hereby certify that on May 21, 2008, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by e-mail or to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

| | |
|---|---|
| Craig E. Stewart, Esquire | cstewart@eapdlaw.com |
| Raymond M. Ripple, Esquire | rripple@eapdlaw.com |

/s/ John D. Deacon, Jr.